<u>FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

—————————————————— :
PHILLIP WOOD,                          :          Civil No. 10-2075 (JHR)
                                       :
              Petitioner,              :
                                       :
       v.                              :          **<u>OPINION</u>**
                                       :
JOHN E. MAIN,                          :
                                       :
              Respondent.              :
—————————————————— :

**APPEARANCES:**

>       PHILLIP WOOD, #15067
>       Anne Klein Forensic Center
>       P.O. Box 7717
>       West Trenton, New Jersey  08628
>
>       JENNIFER L. BENTZEL, ASSISTANT PROSECUTOR
>       ROBERT D. BERNARDI, BURLINGTON COUNTY PROSECUTOR
>       49 Rancocas Road
>       Mt. Holly, New Jersey  08060

**RODRIGUEZ**, Senior District Judge

Presently before the Court is a Petition for Writ of Habeas Corpus under 28

U.S.C. § 2254 challenging the constitutionality of two State court orders entered on July

21, 2000, and October 18, 2002, in the Law Division of the Superior Court of New

Jersey, Burlington County, in <u>In re Commitment of Phillip A. Wood</u>, No. A-5731-04T4,

2007 WL 4356135 (N.J. Super. Ct. App. Div., Dec. 12, 2007), <u>cert. denied</u>, 194 N.J. 444

(2008) (table).   This Petition presents a novel question implicating the seminal case of

<u>State v. Krol</u>, 68 N.J. 236 (1975).  The issue confronting the Court is whether a

suspension of a Petitioner's <u>Krol</u> status followed by a term of incarceration vitiates the

Court's ability to reinstate Krol.  Put differently, Petitioner contends that his intermittent incarceration is evidence that he was no longer in need of medical treatment as prescribed by Krol and, therefore, the State court did not have the authority to civilly commit upon the conclusion of his penal confinement.[1]

For the reasons expressed below and because Petitioner was released from confinement pursuant to Krol, 68 N.J. 236, on April 18, 2010 (Dkt. No. 25-2), the Court will dismiss the Petition and deny a certificate of appealability.

## I.  BACKGROUND

At the age of nineteen and after an argument with his father about money, Petitioner set fire to the family home while his family was inside sleeping.  All family members escaped by jumping from second floor windows, except Petitioner's two-month old nephew, who died in the fire.  Petitioner was charged with felony murder and aggravated arson in the Superior Court of New Jersey, Law Division, Burlington County. In 1981, he was found not guilty of these crimes by reason of insanity ("NGI").  See In re Wood, 2007 WL 4356135, at *1.  As a result, Petitioner was involuntarily committed to Ancora Psychiatric Hospital as an NGI acquittee, and received periodic review hearings, in accordance with Krol, 68 N.J. 236.[2]

---

[1] This Court has subject matter jurisdiction over Petitioner's habeas claim because he was in custody on Krol status when he filed the § 2254 Petition and he alleged that the procedures used to detain him at the expiration of his penal sentence violated due process and equal protection.

[2] "When a person accused of a crime is acquitted by reason of insanity, the accused may be held in continued confinement if the person is a danger to self or others and is in need of medical treatment.  We describe such a person as being on Krol status."  In re Commitment of W.K., 159 N.J. 1, 2 (1999).

2

On August 5, 1999, while confined at Ancora, Petitioner was charged with setting fire to bed linens.  See In re Wood, 2007 WL 4356135 at *1.  On December 22, 1999, Petitioner was charged with aggravated assault of his female psychiatrist.  Id.  Based on Petitioner's guilty plea, on May 3, 2000, the Law Division sentenced him to three years in prison on the assault charge and to a concurrent 18-month sentence on a criminal mischief charge.  Id.

On July 21, 2000, the Burlington County Law Division entered an order (one of the orders challenged in this § 2254 Petition) in the Krol proceeding which suspended Petitioner's Krol hearings while he was serving his prison sentence for the aggravated assault conviction.  In addition, the Law Division ordered the New Jersey Department of Corrections ("NJDOC") to notify the court 90 days prior to Petitioner's parole or release for the purpose of scheduling a Krol hearing.  (Dkt. No. 25-3, pp. 97-98.)

Petitioner's release was scheduled for November 4, 2002 and, by way of letter dated August 2, 2002, the NJDOC advised the prosecutor that professional staff evaluated Petitioner and determined that he was not currently in need of involuntary commitment on the grounds of mental illness or dangerous to himself, others, or property within the reasonably foreseeable future, as required by N.J. Stat. Ann. §§ 2C:47-5 and 30:4-82.4.  (Dkt. No. 25-3, pp. 108-09.)  The letter further stated that, since Petitioner was on Krol status, a Krol hearing should be scheduled prior to his release. Id.

Following a hearing on October 18, 2002, during which arguments of counsel were heard and reports of NJDOC staff psychiatrists were considered, the Law Division entered a second order (the second order being challenged in the instant § 2254

3

proceeding) in the Krol proceeding.  This order vacated the July 21 order, which suspended hearings while Petitioner was in the care and custody of the NJDOC, and directed that Petitioner be transported to Ancora for review of his Krol status.  (Dkt. No. 25-3, pp. 99-100.)

On December 2, 2002, an evidentiary hearing was held to determine if Petitioner should be confined under Krol as an NGI acquittee of the 1981 murder and arson charges.  (Dkt. No. 25-6.)  After hearing testimony of the psychiatrist, the court ruled Petitioner be confined under Krol.  (Id. at p. 16.)  Prior to the conclusion of the hearing, Petitioner argued that, if he needed to be committed under Krol, then he "certainly wouldn't have been capable of staying in prison for three years without any problems, perfectly sane, then they turn me off like a light bulb and I'm crazy under insanity status all over again . . . .  That's a legal contradiction."  (Id. at p. 22.)  Petitioner asked the court why his status couldn't be reduced to civil commitment status from Krol status.  (Id. at 23.)  The court responded that Petitioner's Krol status could remain for up to 30 years and that Petitioner's doctor determined him to be mentally ill and recommended that he remain on Krol status.  (Id. at pp. 23-24.)

Petitioner appealed the orders dated July 21, 2002, and October 18, 2002, to the Appellate Division of the Superior Court of New Jersey.  See In re Wood, 2007 WL 4356135 at *1.  Petitioner alleged that his constitutional rights were violated when the Superior Court suspended his Krol hearings while he was in prison for the assault conviction. Id. at *2.  On December 12, 2007, the Appellate Division affirmed both orders in an unpublished opinion. The court noted that state law requires periodic reviews of NGI commitment "no later than (1) three months from the date of the first

4

hearing, and (2) nine months from the date of the first hearing, and (3) 12 months from the date of the first hearing, and (4) at least annually thereafter, if the patient is not sooner discharged." Id.  The court went on to conclude that even "if Wood had been afforded a Krol hearing while imprisoned, he would not have been released, even if it were determined he was no longer a danger to self or others.  Because there was no purpose to be accomplished by a Krol review while Wood was incarcerated, a relaxation of R. 4:74-7 was appropriate, did not violate Wood's constitutional rights, and was in accordance with his consent." Id. at *3.  The Appellate Division also rejected Wood's argument that his transfer to prison for service of the new criminal sentence necessitated termination of his Krol status because he was no longer mentally ill.[3]

On March 12, 2008, the New Jersey Supreme Court denied Wood's petition for certification. See In re Wood, 945 A.2d 1288 (2008) (table).  On September 5, 2008,

---

[3]The court reasoned as follows:

> Krol found that due process and equal protection required persons found NGI to be treated similarly to civil committees.  As such, persons found NGI should not be institutionalized unless necessary to prevent danger to self or the community.  N.J.S.A. 2C:4-8(c) echoes this sentiment by ensuring that "[n]o person committed under this section" be placed in a correctional institution rather than a treatment facility for the crime which they were found NGI. The Legislature clearly did not intend to create a loophole for NGI committees to circumvent their maximum period of Krol confinement by forcing the State to choose whether to keep a committee on Krol status or to prosecute him for an offense which may result in a relatively short sentence.  It is clear the Legislature intended the prohibition in N.J.S.A. 2C:4-8(c) to be with reference to the offense for which the committee was found NGI and not for other criminal acts.

In re Wood, 2007 WL 4356135 at *3 (internal citations omitted).

Petitioner filed his first § 2254 Petition in the United States District Court challenging the July 21, 2000 and October 18, 2002 orders.  The District Court dismissed the first petition for lack of subject matter jurisdiction on February 20, 2009.[4]  See Wood v. New Jersey, Civ. No. 08-4515, 2009 WL 448777 (D.N.J. Feb. 20, 2009).  Then, Petitioner was released from incarceration on November 5, 2009 and recommitted under the NGI standard under Krol.  By order filed March 31, 2010, the New Jersey Superior Court terminated Petitioner's NGI Krol status as of April 18, 2010, and ordered the Anne Klein Forensic Center to immediately evaluate Petitioner to determine whether or not he should be committed pursuant to the New Jersey Civil Commitment Law, N.J. Stat. Ann. § 30:4-27.1 et seq.  (Dkt. No. 25-2, p. 26.)

A hearing was conducted and Petitioner was civilly committed effective April 18, 2010, pursuant to N.J. Stat. Ann. § 30:4-27.15 (a) which provides that "[i]f the court finds by clear and convincing evidence that the patient needs continued involuntary commitment to treatment, it shall issue an order authorizing the involuntary commitment of the patient and the assignment or admission of the patient . . . ." In the

---

[4]The District Court noted that because Petitioner did not challenge his March 5, 2007 conviction and sentence, and because "the habeas petitioner [must] be 'in custody' under the conviction or sentence under attack at the time his petition is filed, . . . the question here is whether either of the challenged orders imposes an imminent restraint on Petitioner's liberty when his criminal sentence expires."  Wood v. New Jersey, 2009 WL 448777 at *4-5 (internal citations omitted).  The Court concluded that because the outcome of Petitioner's Krol status hearing could have resulted in Petitioner being released when his sentence expired, the challenged orders "do not impose any future restraint on Petitioner's liberty because future confinement at Ancora is not inevitable. Thus, Petitioner is not 'in custody' as a result of the challenged orders, and this Court lacks jurisdiction over the Petition challenging the constitutionality of those orders."  Id. at *6.

meantime, the Present § 2254 Petition was filed on April 1, 2010 (17 days before his NGI status commitment expired). The Clerk received it on April 7, 2010. Petitioner challenges his detention on <u>Krol</u> status as a result of the July 21, 2000, and October 18, 2002, Law Division orders on the following ground:

> GROUND ONE: The trial court erroneously suspended Mr. Woods Krol hearings pending release from prison in violation of Due Process and/Equal Protection of law of the 14th Amendment on July 21, 2000, the Hon. Victor Friedman (JSC) signed a consent order suspending Krol review hearings pending expiration of Mr. Woods prison sentence. On October 17, 2002, after Mr. Woods expiration of the prison sentence, the Hon. Thomas S. Smith, JSC, ordered that Mr. Wood be transported to Ancora State Psychiatric Hospital for a psychiatric evaluation. After the Dept. of Corrections had determined he was not in need of commitment.

(Dkt. No. 1, p. 6.)

Respondents filed an Answer arguing that the Petition is moot because Petitioner's <u>Krol</u> status terminated on April 18, 2010, while this Petition was pending, and alternatively, that the Petition should be denied on the merits. Petitioner filed a Reply and a motion for appointment of counsel.

## II. DISCUSSION

The Petition before this Court challenges Petitioner's confinement as a result of the Law Division orders which suspended <u>Krol</u> status hearings while Petitioner was incarcerated (the July 21, 2000 order), and reinstated <u>Krol</u> status hearings 90 days prior to his release from prison (the October 18, 2002 order). Petitioner argues in essence that his new criminal conviction and three year penal incarceration rebutted the inference which arose from the 1981 NGI verdict that he was mentally ill. He further

argues that, when he was released from penal incarceration, due process and equal protection required the state to either release him or to civilly commit him under the clear and convincing evidence standard applicable to civil commitments (rather than the preponderance of evidence standard applicable to NGI acquittees on <u>Krol</u> status).[5]

Petitioner's argument is not without some force.  As will be further discussed, Petitioner's claim lies in the tension between the holdings of <u>Baxstrom v. Herold</u>, 383 U.S. 107 (1966), holding that due process requires a state to release a prisoner at the expiration of his incarceration unless it civilly commits him under the procedures applicable to civil commitments, and  <u>Jones v. United States</u>, 463 U.S. 354 (1983), holding that the preponderance of the evidence standard satisfies due process for indefinite commitment of NGI acquittees.  Before reconciling the merits of Petitioner's claim with Supreme Court jurisprudence, the Court must first consider whether Petitioner's due process and equal protection claims became moot when New Jersey terminated his NGI <u>Krol</u> status on April 18, 2010, and then civilly committed him under

---

[5] Under New Jersey law, the only difference between civil commitment and NGI commitment is the burden of proof.  <u>See</u> <u>In re Commitment of M.M.</u>, 871 A.2d 707 (N.J. Super. Ct. App. Div. 2005).  Defendants committed after an NGI finding are reviewed on a periodic basis under the same standards as those applied to civil commitments, "except that the burden for establishing the need for continued commitment is by a preponderance of the evidence, whereas in a civil commitment proceeding it is by clear and convincing evidence."  <u>Id.</u> at 710.  The lesser burden of proof continues during the maximum period for which imprisonment could have been imposed . . . for the charges on which the defendant has been acquitted by reason of insanity . . . ."  <u>Id.</u>  After expiration of the ordinary maximum term, the state's burden of showing a continuing need for civil commitment rises to the "clear and convincing evidence" standard set forth in N.J. Stat. Ann. §30:4-27.15(a) from the "preponderance of the evidence" standard under <u>Krol</u> and N.J. Stat. Ann. § 2C:4-8b(3).  <u>Id.</u> at 711 n.3 (citing <u>In re Commitment of W.K.</u>, 731 A.2d 482, 483 (N.J. 1999))

the clear and convincing evidence standard applicable to civil committees under N.J.

Stat. Ann. § 30:4-17.15(a).

A. Mootness

Article III of the Constitution limits the judicial power of federal courts to "cases

or controversies" between parties. U.S. CONST. art. III, § 2. "This case-or-controversy

requirement subsists through all stages of federal judicial proceedings, trial and

appellate. . . . The parties must continue to have 'a personal stake in the outcome' of the

lawsuit." Lewis v. Continental Bank Corp., 494 U.S. 472, 477-78 (1990). "This means

that, throughout the litigation, the plaintiff must have suffered, or be threatened with,

an actual injury traceable to the defendant and likely to be redressed by a favorable

judicial decision." Spencer v. Kemna, 523 U.S. 1, 7 (1998) (citation and internal

quotation marks omitted).

In Spencer v. Kemna, the Supreme Court considered whether a habeas petition

challenging the revocation of the petitioner's parole became moot when the petitioner

completed the entire term of imprisonment underlying the parole revocation. The Court

acknowledged that a habeas challenge to a criminal conviction is not necessarily mooted

by expiration of the sentence but noted that the petitioner attacked "only the wrongful

termination of his parole status." Spencer, 523 U.S. at 8. The Court explained that

"[t]he reincarceration that he incurred as a result of that action is now over, and cannot

be undone. Subsistence of the [habeas case] requires, therefore, that continuing

'collateral consequences' of the parole revocation be either proved or presumed." Id.

The Court rejected the argument that collateral consequences of the revocation of parole

9

would be presumed and then considered and rejected each alleged concrete injury in-fact suggested by the habeas petitioner.  Specifically, the Court rejected petitioner's contention that the revocation of parole could be used to the petitioner's detriment in any future proceeding as speculative,[6] rejected the interest in vindicating reputation as legally insufficient, and rejected the contention that the absence of a federal remedy to vindicate alleged constitutional violations was sufficient to avoid mootness.  The Court also rejected the argument that a habeas challenge to the revocation of parole fell within the exception to the mootness doctrine for cases that are capable of repetition, yet evading review.  "He has not shown (and we doubt that he could) that the time between parole revocation and expiration of sentence is always so short as to evade review.  Nor has he demonstrated a reasonable likelihood that he will once again be paroled and have that parole revoked."  Id. at 18 (citations and internal quotation marks omitted).

In this case, Petitioner alleges that New Jersey should have used the civil commitment standard of clear and convincing evidence to determine whether he was mentally ill, and therefore required hospitalization due to dangerousness upon the expiration of his penal incarceration for a crime committed while he was on Krol commitment.  Essentially, Petitioner argues that New Jersey's use of the preponderance of the evidence standard to evaluate whether he should be civilly committed was unconstitutional.  In light of the fact that Petitioner's NGI Krol status expired after he filed the present Petition and he was subsequently civilly committed under the clear and

---

[6] See Spencer, 523 U.S. at 14-15 (noting that alleged collateral consequences that are "contingent upon [petitioner's] violating the law, getting caught, and being convicted" are too speculative to avoid mootness since they are "a possibility rather than a certainty or even a probability").

convincing evidentiary standard, the Court must determine whether the present habeas Petition is moot — because it challenges the use of the preponderance of the evidence standard used to civilly commit him on December 2, 2002 after his criminal sentence expired. Now that Petitioner has been civilly committed under the more onerous clear and convincing evidentiary standard , this Court must consider whether any concrete injury-in-fact is attributable to his previous commitment on NGI Krol status under the preponderance of the evidence standard.

The negative consequences flowing from the allegedly wrongful continuation of Petitioner's Krol status when he was released from penal incarceration would have existed in any event, since even if Krol status had terminated when Petitioner was criminally convicted, such termination could not eliminate the fact that in 1981, Petitioner was found NGI and committed as an NGI acquittee from 1981 until the time of the criminal conviction. Thus, these negative consequences are not sufficient to constitute injury-in-fact attributable to the use of Krol status procedures to commit Petitioner at the expiration of his penal incarceration.

Moreover, Petitioner fails to demonstrate that his petition qualifies for an exception to the mootness doctrine for cases that are capable of repetition yet evading review. First, Petitioner cannot show that the time between a conviction for a crime committed during NGI commitment and the expiration of the NGI status term is always so short as to evade review. See Spencer, 523 U.S. at 17-18. Given that he could have been convicted and penally incarcerated early in his Krol term, Petitioner cannot satisfy the first requirement for this mootness exception, because the challenged action in its duration is not always too short to be fully litigated prior to cessation or expiration. See

11

id.  Petitioner also fails to satisfy the second requirement.  Given that the there is no reasonable expectation that Petitioner will again be found NGI and he will again be convicted of a crime during his NGI commitment, Petitioner's claim does not fall within the exception.  See id.[7]

Finally, on a practical level, Petitioner was recently civilly committed under the clear and convincing evidentiary standard. See N.J. Stat. Ann. § 30:4-17.15(a).  Thus, even if the Court found that New Jersey erroneously employed the preponderance of the evidence standard to commit him at the expiration of his penal sentence, there is no relief to be had by Petitioner.  A favorable ruling by the Court would result in an order directing respondents to release Petitioner unless they commit him under the clear and convincing evidence standard.  And that is exactly what happened when Petitioner's Krol status expired on April 18, 2010— Petitioner has already been committed under the clear and convincing evidentiary standard in accordance with N.J. Stat. Ann. § 30:4-17.15(a).

Spencer requires this Court to address the issue of collateral consequences in terms of the "likelihood" that a favorable decision would redress the alleged injury and prohibits reliance on speculative collateral consequences which are no more than "a possibility rather than a certainty or even a probability."  Spencer, 532 U.S. at 14-16; accord Burkey v. Marberry, 556 F.3d 142, 148 (3d Cir. 2009).  Petitioner has not shown a collateral consequence that persists today and is likely to be redressed by a favorable

---

[7] This Court is aware that after service of his penal sentence and recommitment under the NGI standard in 2002, Petitioner was convicted of another crime, he served another penal sentence, and he was again re-committed under the NGI standard.  However, this does not show that there **presently** exists a reasonable expectation that he will again be found NGI and again commit a crime on NGI status.  Such a scenario was rejected as too speculative in Spencer.

judicial decision.  Therefore, Petitioner's habeas petition became moot when his NGI status expired on April 18, 2010.  As Petitioner has not satisfied the requirements for the mootness exception for cases that are capable of repetition yet evading review, this Court is constrained to dismiss the habeas petition as moot.  See, e.g., United States v. Williams, 373 Fed. App'x 186 (3d Cir. 2010) (prisoner's unconditional release from confinement mooted appeal from order revoking supervised release in which he challenged sufficiency of evidence to support violation of supervised release and reasonableness of above-guideline sentence); Burkey, 556 F.3d at 148 (petitioner's release from custody mooted habeas challenge to the failure to grant early release for successful completion of drug abuse treatment program, even though it was possible that sentencing court could reduce term of supervised release if he prevailed, since "the possibility that the sentencing court will use its discretion to modify the length of Burkey's term of supervised release . . . is so speculative that any decision on the merits by the District Court would be merely advisory"); United States v. Robinson, 39 Fed. App'x 723 (3d Cir. 2002) (appeal from order denying § 2255 motion to correct sentence of imprisonment stemming from revocation of supervised release became moot when appellant was released from imprisonment imposed for revocation of supervised release).[8]

---

[8] The Supreme Court's brief opinion in United States v. Juvenile Male, 130 S. Ct. 2518 (2010), also supports this Court's mootness ruling.  In that case, a juvenile was adjudicated delinquent in 2005 for engaging in sexual acts with a person under twelve years of age, which would have been a federal crime if committed by an adult, prior to the enactment of the federal Sex Offender Registration and Notification Act, which applied to sex offenders convicted of offenses for which registration is required prior to its enactment in 2006.  In 2007, the district court sentenced the juvenile to an additional six-month term of detention to be followed by juvenile supervision until his twenty-first birthday and ordered him to register as a sex offender

B.  Merits

Alternatively, Petitioner is not entitled to habeas relief because the Appellate Division adjudicated his claims on the merits, and the adjudication was not an unreasonable application of Supreme Court jurisprudence.

Where a federal claim was "adjudicated on the merits" in state court proceedings,[9] as in this case, the writ must be denied unless adjudication of the claim was contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States, or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.  See 28 U.S.C. § 2254(d).  "This is a difficult to meet, and highly deferential standard for evaluating state-court rulings, which demands

_____

under the aforesaid act as a condition of his supervision.  The Ninth Circuit vacated the sex-offender registration requirements of the juvenile supervision order on the ground that retroactive application of the Act violates the Ex Post Facto Clause, and the government sought certiorari to review this determination.  The Supreme Court noted that, because the juvenile's term of supervision expired when he turned 21, "and thus he no longer is subject to those sex-offender-registration conditions.  As such, this case likely is moot unless respondent can show that a decision invalidating the sex-offender registration conditions of his juvenile supervision would be sufficiently likely to redress 'collateral consequences adequate to meet Article III's injury-in-fact requirement.'"  Juvenile Male, 130 S. Ct. at 2519 (citing Spencer, 523 U.S. at 14).

   [9] "An 'adjudication on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground."  Rompilla v. Horn, 355 F.3d 233, 247 (3d Cir. 2004) (citations and internal quotation marks omitted), reversed on other grounds sub nom. Rompilla v. Beard, 545 U.S. 374 (2005).  A state court may render an adjudication on the merits of a federal claim by rejecting the claim in an order unaccompanied by an opinion explaining the reasons relief has been denied.  See Harrington v. Richter, 131 S. Ct. 770, 784 (2011) (noting that "a state court need not cite or even be aware of [Supreme Court] cases . . . .  Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief.  This is so whether or not the state court reveals which of the elements in a multipart claim it found insufficient") (citations omitted).

that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011) (citations and internal quotation marks omitted).  A decision is "contrary to" a Supreme Court holding within 28 U.S.C. § 2254(d)(1), if the state court "contradicts the governing law set forth in [the Supreme Court's] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e Supreme] Court and nevertheless arrives at a [different] result." Williams v. Taylor, 529 U.S. 362, 405-06 (2000).  Under the "'unreasonable application' clause of § 2254(d)(1), a federal habeas court may grant the writ if the State court identifies the correct governing legal principle from th[e Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 413.

In this case, the Appellate Division determined that application of the NGI commitment standard of proof governed Petitioner's commitment upon expiration of his short prison sentence for crimes committed while he was detained on NGI status. There are several United States Supreme Court cases that inform the Court's discussion of Petitioner's claim.  In Baxstrom v. Herold, 383 U.S. 107 (1966), the Supreme Court held that a state violates equal protection by civilly committing a prisoner at the expiration of a penal term of incarceration without providing the same procedures as those provided for civil commitment of a person who is not completing a prison sentence. Id. at 110.  In that case, the State argued that it "has created a reasonable classification differentiating the civilly insane from the 'criminally insane,' [defined] as those with dangerous or criminal propensities." Baxstrom, 383 U.S. at 111.  The Court acknowledged that such a distinction may be reasonable "for purposes of determining the type of custodial or medical care to be given, but it has no relevance whatever in the

15

context of the opportunity to show whether a person is mentally ill at all." Id. at 111-12
(noting that "there is no conceivable basis for distinguishing the commitment of a
person who is nearing the end of a penal term from all other civil commitments"). The
Court held that an inmate may not be committed upon the expiration of a prison
sentence applying a standard lower than the civil commitment standard. See Id. at 111-
14. As a result, an allegedly mentally ill convicted criminal is entitled to release at the
end of his term unless the State commits him in a civil proceeding. Id.

In 1975, the Supreme Court ruled that the continued compulsory confinement in
a mental hospital of a mentally ill person who is no longer dangerous violates the
person's due process right to freedom from bodily restraint. See O'Connor v.
Donaldson, 422 U.S. 563, 574-75 ("Nor is it enough that Donaldson's original
confinement was founded upon a constitutionally adequate basis . . . because even if his
involuntary confinement was initially permissible, it could not constitutionally continue
after that basis no longer existed."). And, in 1979, the Court held that Due Process
requires the state to prove by clear and convincing evidence that an individual is
mentally ill and that he requires hospitalization because he is dangerous to himself or
others before he may be committed to a mental institution. Addington v. Texas, 441
U.S. 418 (1979). "We conclude that the individual's interest in the outcome of a civil
commitment proceeding is of such weight and gravity that due process requires the state
to justify confinement by proof more substantial than a mere preponderance of the
evidence." Id. at 427.

However, in Jones v. United States, the Supreme Court distinguished Addington
and Baxstrom and held an NGI acquittee may be committed under a preponderance of

16

the evidence standard. Jones, 463 U.S. at 359.  Jones was arrested in the District of Columbia for attempting to steal a jacket from a department store (a misdemeanor punishable by a maximum one-year sentence), and on March 12, 1976, he was found NGI and committed.  Id.  A release hearing was conducted on February 22, 1977. Id. at 360.  Because Jones had already been hospitalized for longer than the maximum period he could have spent in prison if he had been convicted, he demanded that he be released or recommitted pursuant to the civil commitment standards.  Id. at 360.  The District of Columbia Superior Court reaffirmed the findings of mental illness and dangerousness made by a preponderance of the evidence at the previous hearing and denied Jones's request for a civil commitment hearing.  Id.  Jones appealed, and the District of Columbia Court of Appeals affirmed en banc. Id. at 361.  On appeal to the Supreme Court, Jones argued that the due process standards set forth in Addington were not met in his case because the finding of present mental illness and dangerousness was established only by a preponderance of the evidence.  Id. at 362.  Jones argued that "the Government's only conceivably legitimate justification for automatic commitment is to ensure that insanity acquittees do not escape confinement entirely, and that this interest can justify commitment at most for a period equal to the maximum prison sentence the acquittee could have received if convicted."  Id. at 362-63.  Because Jones had been hospitalized for longer than the one year he might have served in prison, he asserted that "he should be released unconditionally or recommitted under the District's civil-commitment procedures." Id. at 363.

The Court emphasized that Jones did not dispute that he remained mentally ill and dangerous, and noted that it was not deciding "whether the District's procedures for

17

release are constitutional." Id. at 363 n.11.  First, the Court determined that the finding

of insanity at the criminal trial is sufficiently probative of mental illness and

dangerousness to justify commitment. Id. at 364.  The Court acknowledged that "[t]he

fact that a person has been found, beyond a reasonable doubt, to have committed a

criminal act certainly indicates dangerousness. . . .  Indeed, this concrete evidence

generally may be at least as persuasive as any predictions about dangerousness that

might be made in a civil-commitment proceeding." Id.  The Court also said that it would

not be unreasonable to determine that the inference of continuing mental illness is

supported by an insanity acquittal.  Id. at 366 ("It comports with common sense to

conclude that someone whose mental illness was sufficient to lead him to commit a

criminal act is likely to remain ill and in need of treatment.").

　　　Next, the Court rejected Jones' argument that his continued commitment by a

preponderance of the evidence was an unconstitutional violation of Addington's civil

commitment requirement of proof by clear and convincing evidence. Id. at 367. The

Court noted that there are "important differences between the class of potential civil-

commitment candidates and the class of insanity acquittees that justify differing

standards of proof." Id.  Importantly, when the acquittee himself advances that his

criminal act was the product of mental illness, there is a diminished risk that he is being

committed for mere idiosyncratic behavior.  Id.  The Court went on to hold that " . . .

concerns critical to our decision in Addington are diminished or absent in the case of

insanity acquittees.  Accordingly, there is no reason for adopting the same standard of

proof in both cases." Id. (footnotes, citations and internal quotation marks omitted).

Finally, the Supreme Court rejected Jones' argument that he was entitled to release because he had been hospitalized for a period longer than he could have been incarcerated if convicted. Id. at 368.  The Court explained that the purpose of incarceration is "to reflect society's view of the proper response to commission of a particular criminal offense, based on a variety of considerations such as retribution, deterrence, and rehabilitation.  The State may punish a person convicted of a crime even if satisfied that he is unlikely to commit further crimes." Id. at 368-69.  On the contrary, "[t]he purpose of commitment following an insanity acquittal, like that of civil commitment, is to treat the individual's mental illness and protect him and society from his potential dangerousness.  The committed acquittee is entitled to release when he has recovered his sanity or is no longer dangerous." Id. at 368.  However, "because it is impossible to predict how long it will take for any given individual to recover - or indeed whether he ever will recover - Congress has chosen, as it has with respect to civil commitment, to leave the length of commitment indeterminate, subject to periodic review . . . ." Id.  "The length of the acquittee's hypothetical criminal sentence therefore is irrelevant to the purposes of his commitment." Id. at 369.[10]  The Court summarized its holding as follows:

---

[10]In a footnote, the Supreme Court distinguished Baxstrom and its progeny on the grounds that "[n]one of those cases involved an insanity acquittee, and none suggested that a person under noncriminal confinement could not be hospitalized in excess of the period for which he could have served in prison if convicted for the dangerous acts he had committed." Jones, 463 U.S. at 369 n.19.  "The inherent fallacy of relying on a criminal sanction to determine the length of a therapeutic confinement is manifested by petitioner's failure to suggest any clear guidelines for deciding when a patient must be released." Id.

> We hold that when a criminal defendant establishes by a
> preponderance of the evidence that he is not guilty of a crime
> by reason of insanity, the Constitution permits the
> Government, on the basis of the insanity judgment, to
> confine him to a mental institution until such time as he has
> regained his sanity or is no longer a danger to himself or
> society.

Id. at 370.

Under Jones, a state may commit a NGI acquittee by showing mental illness and dangerousness by a preponderance of the evidence, and that due process does not require Addington's clear and convincing standard. Two facts underscore the holding in Jones: "the defendant committed an act that constitutes a criminal offense, and . . . he committed the act because of mental illness." Jones, 463 U.S. at 363. "The fact that a person has been found, beyond a reasonable doubt, to have committed a criminal act certainly indicates dangerousness." Id. at 364. Accordingly, an NGI verdict supports an inference of continuing mental illness because "[i]t comports with common sense to conclude that someone whose mental illness was sufficient to lead him to commit a criminal act is likely to remain ill and in need of treatment." Id. at 366.

The Supreme Court distinguished Jones in Foucha v. Louisiana, 504 U.S. 71 (1992). On October 12, 1984, Terry Foucha was found NGI of aggravated burglary and illegal discharge of a firearm, and was committed to a forensic hospital. Id. at 74. In 1988, doctors recommended release because, although Foucha had suffered from drug induced psychosis when he committed the crime, he had recovered from that temporary condition. Id. at 74-5. Relying on Jones, the state court determined that neither due process nor equal protection was violated by permitting continued confinement of an NGI acquittee based on dangerousness alone. Id. at 75. While acknowledging that

20

"insanity acquittees may be initially held without complying with the procedures applicable to civil committees," the Court emphasized that "the period of time during which an insanity acquittee may be held in a mental institution is not measured by the length of a sentence that might have been imposed had he been convicted; rather, the acquittee may be held until he is either not mentally ill or not dangerous." Foucha, 504 U.S. at 76 n.4.  The Court noted that, unlike in Jones, "[i]n this case, Louisiana does not contend that Foucha was mentally ill at the time of the trial court's hearing.  Thus, the basis for holding Foucha in a psychiatric facility as an insanity acquittee has disappeared, and the State is no longer entitled to hold him on that basis." Id. at 77.  "Even if the initial commitment was permissible, it could not constitutionally continue after that basis no longer existed." Id. (citation and internal quotation marks omitted).  Significant with respect to Mr. Woods' claim, the Supreme Court noted:

> Here . . , the State asserts that because Foucha once committed a criminal act and now has an antisocial personality that sometimes leads to aggressive conduct, a disorder for which there is no effective treatment, he may be held indefinitely.  This rationale would permit the State to hold indefinitely any other insanity acquittee not mentally ill who could be shown to have a personality disorder that may lead to criminal conduct.  The same would be true of any convicted criminal, even though he has completed his prison term.  It would also be only a step away from substituting confinements for dangerousness for our present system which, with only narrow exceptions and aside from permissible confinements for mental illness, incarcerates only those who are proved beyond reasonable doubt to have violated a criminal law.

Id. at 82-83 (internal citations omitted).  Therefore, the Court held that the indefinite detention of insanity acquittees who are not mentally ill but who do not prove they would not be dangerous to others is constitutionally impermissible.  Id.

Petitioner's constitutional claim lies in the tension between Jones, Foucha, Baxstrom, and Addington, but it is not squarely governed by any one Supreme Court holding.  The question is whether Petitioner's criminal conviction for crimes committed while he was detained as a NGI acquittee showed that he had regained his sanity, so that Foucha, Addington, and Baxstrom clearly required New Jersey to either release him upon expiration of the criminal sentence or establish that he was mentally ill and dangerous by clear and convincing evidence.  Under § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  Harrington, 131 S. Ct. at 785 (quoting Williams, 529 U.S. at 410).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  Id. at 786 (internal quotation marks omitted).  Determining the reasonableness of the state court's application of the rule of law requires consideration of the specificity of the rule.  "The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.  It is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court."  Id. (citations and internal quotation marks omitted).

Although this Court might find that the New Jersey courts were constitutionally incorrect in using the NGI preponderance standard at the expiration of Petitioner's

penal term (because the conviction of Petitioner showed that he was sane and rebutted the NGI presumption of mental illness), the New Jersey courts' adjudication of Petitioner's due process and equal protection claim was not an unreasonable application of Jones.  See Ernst J. v. Stone, 452 F. 3d 186, 196 (2d Cir. 2006) (holding that New York courts' application of preponderance of evidence standard, instead of clear and convincing evidence standard, in re-commitment proceeding of  NGI acquittee who was released subject to order of conditions at initial hearing, was not unreasonable application of Supreme Court precedent under § 2254(d) because "[n]either the Supreme Court's holding in Jones nor its holding in Foucha directly addresses the circumstances of this case"); Francis S. v. Stone, 221 F. 3d 100 (2d Cir. 2000) (holding that application of preponderance of evidence standard to re-commit NGI acquittee released on order of conditions because he was twice found not dangerous was not unreasonable application of Supreme Court precedent).  "Because our cases give no clear answer to the question presented, let alone one in [Petitioner's] favor, it cannot be said that the state court unreasonabl[y] appli[ed] clearly established Federal law."  Wright v. Van Patten, 552 U.S. 120, 126 (2008) (citations and internal quotation marks omitted). The New Jersey courts' rejection of Petitioner's due process and equal protection claim was not contrary to, or an unreasonable application of Supreme Court holdings.  As a result Petitioner is not entitled to habeas relief under § 2254(d).[11]

C.  Certificate of Appealability

---

[11] This Court denies Petitioner's motion for appointment of counsel because same is not in the interest of justice.  See 18 U.S.C. § 3006A(a)(2)(B); Reese v. Fulcomer, 946 F.2d 247, 263 (3d Cir. 1991), cert. denied, 503 U.S. 988 (1992).

Because Petitioner has not made a substantial showing of the denial of a constitutional right, no Certificate of Appealability will issue pursuant to 28 U.S.C. § 2253(c).  See Fed. R. App. P. 22(b)(1).

### III.  CONCLUSION

For the foregoing reasons, this Court dismisses the Petition, denies the motion for appointment of counsel, and denies a Certificate of Appealability.

 /s/ Joseph H. Rodriguez
**JOSEPH H. RODRIGUEZ**
United States District Judge

DATED: June 6, 2011

24